## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 23-cr-73 (CKK)** |
| | : | |
| **THOMAS COLUMBIAN (11) and** | : | |
| | : | |
| **WAYNE RODELL CARR-MAIDEN (12)** | : | |
| | : | |
| **Defendants.** | : | |

## GOVERNMENT'S MEMORANDUM
## IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendants be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(C) [serious drug felony]. There is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendants' appearance in this case and otherwise protect the community, pursuant to 18 U.S.C. § 3142(e)(3)(A).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## APPLICABLE LAW

Pursuant to 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendants' appearance in this case and otherwise protect the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988)). For a detention decision based upon risk of flight, the government only need

prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). Furthermore, the government may present evidence by way of a proffer at a detention hearing. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release that will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, along with the applicable rebuttable presumption, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the defendants' appearance at future proceedings.

## **BACKGROUND**

On May 18, 2023, a federal grand jury returned a superseding indictment against Defendants Thomas Columbian and Wayne Rodell Carr-Maiden, among others, charging them with conspiracy to distribute more than 400 grams or more of a mixture and substance containing fentanyl (from January 2021 to the present).

## I.    The Overdose Death

The genesis for this investigation is the overdose death of a young woman in the District of Columbia. On January 18, 2022, a three-count indictment was returned against defendants Larry and Justice Eastman, charging them with conspiracy to distribute fentanyl; distribution of fentanyl resulting in serious bodily injury; and distribution of fentanyl resulting in the death of a victim in

Criminal Case No. 22-cr-22-CKK. The charges relate to the November 2020 overdose resulting in serious bodily injury and April 2021 overdose death of a female victim due to fentanyl toxicity. The defendants in that related case, Larry and Justice Eastman, have pled guilty to Count I of their indictment, which is the fentanyl distribution conspiracy, and are pending sentencing.

## II.     The Broader Conspiracy

On March 9, 2023, a federal grand jury returned an indictment against defendants Craig Eastman (younger sibling to both Larry and Justice Eastman), Charles Taylor, and Hector Valdez in Criminal Case No. 23-cr-73-CKK. Evidence uncovered during the investigation of Larry and Justice Eastman indicated that Craig Eastman and his associate Charles Taylor were flying out to Los Angeles to acquire fentanyl-laced pills from their Los-Angeles-based supplier, Valdez. By March 22, 2023, Craig Eastman, Taylor, and Valdez were all in custody, and each of them are presently are detained pending trial.

On April 6, 2023, the indictment was superseded to include, among others, Raymond Nava Jr. and Max Carias Torres. Both Torres and Nava are California-based upstream suppliers to Valdez. On April 26, 2023, both Torres and Nava were arrested in Los Angeles and are also detained pending trial.

## III.    Columbian, Carr-Maiden and the Second Superseding Indictment

A second superseding indictment was returned on May 18, 2023, for, among others, Defendants Thomas Columbian and Wayne Rodell Carr-Maiden. The Defendants' respective roles in the conspiracy is that both function as D.C.-based distributors of fentanyl-laced counterfeit oxycontin pills, each of whom were acquiring their supply from co-Defendant Valdez in Los Angeles. The evidence against each defendant includes a considerable number of communications between him and Valdez, thanks to Valdez' phones being seized and searched after his arrest. In

many of these conversations, each Defendant has explicit conversations with Valdez about acquiring thousands of fentanyl-laced pills.

The below excerpted conversations between Defendant Carr-Maiden and co-Defendant Marvin Bussie[1] reveal that Defendant Carr-Maiden often functioned as a fentanyl trafficker not just for himself, but his co-defendants. The below conversations, where Defendant Carr-Maiden is in blue and co-Defendant Bussie is in green, show that Defendant Carr-Maiden was a seasoned drug trafficker, knowing specific methodology to avoid detection by law enforcement.[2]

---

[1] Co-Defendant Bussie was first identified as a suspected fentanyl trafficker involved in this conspiracy incident to an October 2022 incident at LAX. There, co-Defendant Bussie was stopped for a secondary screening by TSA in advance of his return flight to the Washington D.C. area. During the secondary screening, various candy boxes in his luggage were searched and discovered to contain, in total, approximately one kilogram of blue counterfeit oxycontin pills containing fentanyl. Co-Defendant Bussie fled LAX that day but was eventually apprehended by local law enforcement in Maryland in April 2023.

[2] Co-Defendant Valdez' nickname is "Curl," or "Little Curl."



Despite seemingly knowing the methodology by which he could avoid detection, Defendant Carr-Maiden still expressed apprehension to his co-defendant.



**+12022093140**
U only got carryon right
9/24/2022 2:56:08 PM(UTC-4)
Sources (1)

**SMAYNO**
I'm putting the shit under the plane on me
9/24/2022 2:56:23 PM(UTC-4)
Sources (1)

**SMAYNO**
I ain't getting bagged with this stuff
9/24/2022 2:56:33 PM(UTC-4)
Sources (1)

**+12022093140**
Brah what
9/24/2022 2:56:50 PM(UTC-4)
Sources (1)

**+12022093140**
N how is u gonna get bagged ?
9/24/2022 2:57:10 PM(UTC-4)

**SMAYNO**
I'm not walking through the machine the last two times I put it under that's what I'm doing bra
9/24/2022 2:57:22 PM(UTC-4)
Sources (1)

**SMAYNO**
It's to many
9/24/2022 2:57:28 PM(UTC-4)
Sources (1)

**SMAYNO**
Anything over 5000
9/24/2022 2:57:35 PM(UTC-4)
Sources (1)

**SMAYNO**
I put under
9/24/2022 2:57:39 PM(UTC-4)
Sources (1)

**+12022093140**
Rd and if you lose it u gotta pay im just saying bra
9/24/2022 2:57:44 PM(UTC-4)
Sources (1)

**SMAYNO**
I got a whole bag of clothes
9/24/2022 2:59:06 PM(UTC-4)
Sources (1)

**SMAYNO**
???
9/24/2022 2:59:11 PM(UTC-4)
Sources (1)

**+12022093140**
So thats how u did it last 2 times?
9/24/2022 2:59:11 PM(UTC-4)
Sources (1)

**SMAYNO**
Yes
9/24/2022 2:59:17 PM(UTC-4)
Sources (1)

**+12022093140**
Rd bra ,
9/24/2022 2:59:23 PM(UTC-4)
Sources (1)

**+12022093140**
Then if my shit gone i know u not going give me 7000 so wtf im do
9/24/2022 2:59:55 PM(UTC-4)

6



This exchange is indicative of multiple such exchanges recovered from extractions of Valdez' phones, indicating that Defendant Carr-Maiden makes trips to California in coordination with his co-conspirators, understands the means and methods to smuggle tens of thousands of counterfeit oxycontin pills containing fentanyl, commonly referred to as "blues," by drug traffickers, back to the Washington, D.C. area per trip, and Carr-Maiden duplicates concealment means utilized by his co-conspirators.

Defendant Columbian was apprehended by law enforcement on June 2, 2023. During a search of his residence, in which he and his female acquaintance were located at the time of his arrest, law enforcement discovered the following items in Defendant Columbian's bedroom closet: a loaded Glock 21 handgun, equipped with an extended magazine containing 21 rounds, an

additional live round in the chamber, and a Glock switch designed to make the weapon fire in a fully automatic capacity, along with a baggie containing approximately 100 of the same apparent counterfeit oxycontin pills that field-tested positive for fentanyl. Photographs of these recoveries are displayed in the below images.



These recoveries are unsurprising given Defendant Columbian's communications with co-Defendant Valdez. In text messages extracted from co-Defendant Valdez' phone, Defendant Columbian is observed directing Valdez to mail packages to designated addresses in Washington, D.C. After doing so, the two co-conspirators (Columbian in blue and Valdez in green) discuss methods of payment and proof of shipment.



Cruddy
4908 quarles st ne
11/17/2022 10:59:19 AM(UTC-8)
Sources (1)

Cruddy
Cj Thomas
11/17/2022 10:59:27 AM(UTC-8)
Sources (1)

+14244660097
House or apartment?
11/17/2022 10:59:30 AM(UTC-8)
Sources (1)

+14244660097
And this my cashapp
11/17/2022 10:22:04 AM(UTC-8)
Sources (1)

+14244660097
Hector202323
11/17/2022 10:22:09 AM(UTC-8)
Sources (1)

Cruddyyyy
Imma Apple Pay
11/17/2022 10:22:14 AM(UTC-8)
Sources (1)



Much like the above-described trips to California for Defendant Carr-Maiden, this above exchange between Valdez and Columbian are reflective of several such exchanges. Apple Pay transfers from Defendant Columbian to Valdez further bear out evidence of their business arrangement, as Columbian sent at least $6,700 to Valdez via Apple Pay alone.

Just as Carr-Maiden made trips to visit Valdez for re-supplies of counterfeit oxycontin pills, so too did Defendant Columbian. For example, on October 18, 2022, Columbian travelled to Los Angeles, informing Valdez that Columbian was landing at 7:00 pm, and requesting a ride from LAX. Valdez agreed, and then made the following inquiry:

VALDEZ: yea you going to shop with me?

COLUMBIAN: duh, I always do.

VALDEZ: aye pops how many did you need?

COLUMBIAN: what y charging me?

VALDEZ: shit tbh get more than 6 I'll do 75 cents.

COLUMBIAN: Bra I always get more den 6.

VALDEZ: ok well I'll do 75 cents.

VALDEZ: you getting the joints rn right or just taking you to your hotel?

COLUMBIAN: right now. (Columbian then shares his location with Valdez).

Similar to the text exchanges regarding shipments from Valdez to Columbian, the above exchange is just one such example of multiple text exchanges suggesting trips by Columbian to Los Angeles to purchase counterfeit oxycontin.

## **ARGUMENT**

**I.     The Defendants Should Be Detained Pending Trial Because They Pose a Danger to the Community and Risk of Flight**

In light of the nature and circumstances of the offenses charged, the weight of the evidence against the defendants, the defendants' criminal history and characteristics, and the dangers to the community posed by the defendants' release, neither defendant can overcome the presumption that they are a danger to the community and a risk of nonappearance. To the contrary, these factors establish that the presumption is correct.

### **A.     The nature and circumstances of the offense**

The nature and circumstances of the charged offenses weigh in favor of detention. The grand jury found probable cause to believe that the Defendants engaged in a conspiracy to distribute more than 400 grams of fentanyl, dating back to January 2021. At this point in the opioid epidemic, it is common knowledge that fentanyl kills. According to the DEA, "fentanyl is a

Schedule II controlled substance that is similar to morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[3] According to the CDC, overdose deaths in the United States continue to rise, with more than 80 percent of such deaths attributed to synthetic opioids, primarily fentanyl.[4] In 2021, the United States set a record high, with drug overdose deaths toppling 100,000 and fentanyl causing nearly two-thirds of these deaths.[5] According to Howard University Hospital, the District of Columbia suffers close to 400 opioid related deaths per year—contributing to the third highest opioid mortality rate in the country with 34.7 deaths per 100,000 persons compared to the national average of 14.6 deaths.

Here, the Defendants were dealing fentanyl, which is made worse by the fact that it was disguised and passed off as legitimate oxycodone. Further, the Defendants' text messages suggest that they knew the pills they were receiving and dealing were not legitimate, and yet they continued to acquire and distribute these dangerous substances to the community. This factor weighs in favor of detention.

### B. The weight of the evidence against the Defendants

The weight of the evidence against the Defendants is extremely strong. As laid out in the factual background, communications clearly show both defendants trafficking in fentanyl, with Defendant Carr-Maiden articulating the risk and corresponding fear he felt for trafficking tens of thousands of counterfeit oxycontin pills through air travel. Defendant Columbian's money

---

[3] https://www.dea.gov/resources/facts-about-fentanyl
[4] https://www.cfr.org/in-brief/us-fentanyl-crisis-what-know
[5] https://www.cnn.com/2021/11/17/health/drug-overdose-deaths-record-high/index.html

transfers to his supplier, co-Defendant Valdez, corroborate the evidence that his was obtaining large quantities of counterfeit oxycontin both in-person and through package shipments. Moreover, Defendant Columbian was apprehended with additional blue pills that also appear to be the same counterfeit oxycontin pills containing fentanyl, indicating the ongoing nature of this criminal enterprise. This factor weighs in favor of detention.

### C. The history and characteristics of the Defendants

The circumstances surrounding Defendant Columbian's arrest strongly support detention. As detailed above, he was arrested not only with additional counterfeit oxycontin pills that field-tested positive for fentanyl, but also with a handgun equipped with a large-capacity magazine, with one round in the chamber, and a Glock switch enabling the firearm to function as a fully automatic weapon. Finally, a review of Defendant Columbian's criminal history indicates that the present indictment and subsequent arrest is not an aberrational incident for him. Specifically, Defendant Columbian has been previously arrested in 2018 for selling narcotics in a school zone, as well as for attempted robbery in 2016. While Defendant Columbian admittedly does not have prior felony convictions, the present indictment merely reflects an escalation of his prior criminal conduct.

Similar to his co-Defendant Columbian, Defendant Carr-Maiden's criminal history supports detention in this case. Defendant Carr-Maiden has multiple arrests for crimes of violence and destruction of property across an extended time period. Moreover, Defendant Carr-Maiden was administratively discharged from the Armed Forces after being charged for disobeying orders from a superior officer, failing to obey general orders, and dereliction of duty. Put simply, Defendant Carr-Maiden's criminal history and characteristics support the presumption of detention in this matter, as he has displayed a history of violence and failure to comply with orders or directives, and he will again if granted bond by this Court.

13

**D. The nature and seriousness of the danger to any person or the community posed by the person's release**

The fourth factor—the nature and seriousness of the danger to any person or the community posed by the person's release—also weighs in favor of detention. Both Defendants are accused of conspiring to distribute hundreds of kilograms of fentanyl into the Washington D.C. community. Defendant Columbian's arrest underlies the methods in which members of this conspiracy safeguard their product: the possession of automatic weapons. The defendants' release thereby poses a two-fold physical danger to the community. As previously stated, fentanyl is now the leading cause of overdose deaths in the United States, which hit a record high in 2021. Here, both defendants are charged with distributing fentanyl, and one of the two was found with an automatic weapon in his bedroom. Accordingly, the release of either defendant would pose a serious danger to the community.

## **CONCLUSION**

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions of release that will reasonably assure the safety of any other person and the community. Accordingly, the government respectfully requests that the Court grant the government's motion to detain Defendants Columbian and Carr-Maiden pending trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

_/s/ Matthew W. Kinskey_
MATTHEW W. KINSKEY
Assistant United States Attorney
D.C. Bar No. 1031975
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
matthew.kinskey@usdoj.gov

ANDY T. WANG
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
D.C. Bar No. 1034325
Andy.wang@usdoj.gov
202-870-4940

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2023, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

/s/ Matthew W. Kinskey
MATTHEW W. KINSKEY
Assistant United States Attorney